

FILED

AUG 2 8 2018

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RANDY BRYANT WICK,<br><br>Petitioner,<br><br>vs.<br><br>MICHAEL FLETCHER,<br><br>Respondent. | Cause No. CV 17-146-M-DLC-JCL<br><br>FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |

On October 5, 2017, Petitioner Randy Bryant Wick filed a petition seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.) Wick is a state prisoner proceeding pro se.

Following a guilty plea in Montana's Fourth Judicial District Court, on June 10, 2015, Wick was sentenced for one count of Assault with a Weapon. For the reasons set forth below, Wick's petition should be denied.

## I.   Wick's Initial 28 U.S.C. § 2254 Petition

Wick's initial petition alleged the Montana state courts violated his Fourteenth and Sixth Amendment rights to Equal Protection and Speedy Trial because of his indigence. *See* (doc. 4 at 4, ¶13(A)). And he asserts he was

1

deprived of adequate access to a video that Wick contends would have established his actual innocence. *Id.* at 5, ¶13(B). Wick requested dismissal of his felony conviction and asked this Court to either order his immediate release or grant him a jury trial. *Id.* at 7, ¶16. Ultimately, Findings and Recommendations were entered recommending Wick's petition be dismissed without prejudice for failure to exhaust his state court remedies. (Doc. 6.) Wick subsequently filed a Notice of Voluntary Dismissal before any final action was taken relative to the initial petition. (Doc. 7.) This Court dismissed the matter without prejudice on November 20, 2017. (Doc. 8.)

One month later, Wick filed a motion requesting that the Court reopen his case. Wick's motion was granted and Wick was ordered to file an Amended Petition. (Docs. 10 & 13.) Wick timely complied. (Doc. 15.)

## II. State Court Collateral History

In the time that transpired between the filing of Wick's initial petition and his amended petition in this Court, he filed an appeal from the denial of his petition for postconviction relief with the Montana Supreme Court. That Court summarized Wick's case as follows:

> On January 24, 2015, Wick was involved in an altercation outside the Oxford Saloon in Missoula. Wick physically confronted a man whom he accused of failing to return forty dollars Wick gave the man to purchase marijuana. A friend of the man intervened to defend him and Wick brandished a knife, threatening both men. When a Missoula

2

police officer arrived at the scene, Wick put away his knife and began to walk away. The officer ordered him to stop and Wick refused, which prompted the officer to tase Wick twice before Wick could be handcuffed.

Wick was subsequently charged with one count of assault with a weapon, in violation of § 45-5-213, MCA. Public Defender Ted Fellman (Fellman) was appointed counsel and Wick entered a plea of not guilty. Following plea negotiations with the State, Fellman advised Wick of an offer from the State, but explained "I still needed to get [the] surveillance video referenced in the discovery and review it to confirm that it shows what the police reports indicated." Wick nonetheless indicated that he wanted to change his plea to guilty. Wick filed a waiver of rights, a plea agreement, and entered a plea of guilty to assault with a weapon. On May 27, 2015, Wick appeared with counsel for sentencing; however, the sentencing was continued because Wick indicated he was considering withdrawing his plea. Pending the continued sentencing, Fellman obtained the surveillance video of the altercation and watched the video with Wick. Wick advised Fellman that he would consider his options and call him. On June 4, 2015, Wick notified Fellman he wished to proceed with the plea agreement. On June 10, 2015, the District Court sentenced Wick to three years to the Department of Corrections with all time suspended.[1]

On June 16, 2016, Wick wrote a letter to the District Court requesting he be allowed to withdraw his plea. Wick claimed, among other issues, that the surveillance video was new evidence. Following briefing and consideration of the record, the District Court considered the merits of Wick's request and determined that his plea was voluntary, denying Wick's request to withdraw his guilty plea.

*State v. Wick*, DA 17-0185, 2018 MT 99N, Or. at ¶¶ 3-5 (Mont. April 24, 2018).[2]

---

[1] At some point following the entry of judgment, Wick breached the conditions of his suspended sentence and was then re-sentenced to serve a custodial prison sentence. *See eg.* (Doc. 15-1 at 8).

[2] All state court briefing and orders available at: https://supremecourtdocket.mt.gov/ (accessed

3

On appeal Wick argued Fellman provided ineffective assistance by not allowing Wick to review the surveillance video prior to his change of plea, thus resulting in an involuntary plea. The Montana Supreme Court determined, however, that the record revealed there was a through discussion of Wick's rights and the waiver of those rights prior to the entry of Wick's guilty plea. *Id.* at ¶ 6. Further, Wick indicated he was not under the influence of any substances that would affect his decision making and that he was satisfied with the services of his attorney. *Id.* Additionally, no threats or promises had been made to induce Wick to change his plea. Accordingly, the Court found his plea was entered voluntarily and intelligently. *Id.*

Relative to the surveillance video, the Court noted that Wick persisted in his decision to plead guilty despite knowing of the existence of the video and not having yet viewed it. *Id.* Once Wick had seen the video with his attorney, he advised the district court at a subsequent hearing that he wished to proceed to sentencing. *Id.*

The Court ultimately held that Wick's plea was knowingly entered. And it concluded he failed to establish he was prejudiced by Fellman's assistance. *Id.* at ¶ 7. Thus the Court declined to overturn the lower court's denial of his motion to

---

August 22, 2018).

withdraw his plea of guilty. *Id.*

### III. Wick's Claims

In his Amended Petition, Wick claims: 1) his Fourteenth and Sixth Amendment rights were violated because he was unable to make an intelligent plea due to his attorney's negligence and inadequate advice (doc. 15 at 3-4); and, 2) his Fourteenth Amendment rights were violated by the Montana Supreme Court when he was denied counsel on his postconviction appeal. (Doc. 15 at 5-6); *see also*, (Doc. 15-1 at 1-2) (Montana Supreme Court order denying Wick appointed counsel). Wick requests a jury trial or, in the alternative, a judgment of 5 million dollars compensating him for: 3 years of false imprisonment, lost wages, pain, suffering, and mental anguish. (Doc. 15 at 9.)

### IV. Analysis

As a preliminary matter, to the extent that Wick seeks money damages regarding the purported constitutional violations, such damages are not available in a federal habeas corpus action. *Preiser v. Rodriguez*, 411 U.S. 475, 493 (1973); *Muhammad v. Close*, 540 U.S. 749, 750 (2004)(per curiam). Wick has several civil rights actions pending before the Court; he may attempt to advance a claim for damages in those matters.[3]

---

[3] *See e.g., Wick v. Fletcher et al.*, CV-18-72-H, Cmplt. (filed June 20, 2018); *Wick v. Missoula County et al.*, CV-17-147-M, Cmplt. (filed Oct. 10. 2017); *Wick v. State of Montana et al.*, CV-

5

i.  **Denial of Postconviction Counsel**

Relative to the purported denial of postconviction counsel, this claim is simply not cognizable in federal habeas proceedings, as there is no federal constitutional right to counsel for indigent prisoners seeking state postconviction relief:

> Postconviction relief is even further removed from the criminal trial than is discretionary direct review. It is not part of the criminal proceeding itself, and it is in fact considered to be civil in nature. *See Fay v. Noia*, 372 U.S. 391, 423-24 (1963)…States have no obligation to provide this avenue of relief, cf. *United States v. MacCollom*, 426 U.S. 317, 323 (1976)(plurality opinion), and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the state supply a lawyer as well.

*Pennsylvania v. Finley*, 481 U.S. 551, 556-57 (1987).

Because Wick had no constitutional right to postconviction counsel, either in the district court proceedings or the subsequent appeal, he cannot establish a corresponding constitutional violation. The claim should be denied.

ii. **Involuntary Plea/Ineffective Assistance of Counsel**

As explained below, because Wick cannot overcome the deference this Court is required to give the state court decision, this claim should also be denied.

a. **Deferential Review under AEDPA**

To be eligible for federal habeas corpus relief, a state prisoner must establish

---

17-148-M, Cmplt. (filed Oct. 10, 2017); and, *Wick v. State of Montana et al.*, CV-18-124-M, Cmplt. (filed July 6, 2018).

that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Additionally, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) applies to Wick's petition because it was filed after 1996. AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners. *Hurles v. Ryan*, 725 F. 3d 768, 777 (9th Cir. 2014). Under AEDPA, a federal court may not grant a prisoner's petition on a claim that was decided on the merits in state court, unless the state court's adjudication of the claim:

1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

" '[C]learly established Federal law'… is the governing legal principle or principles set forth by the Supreme Court [in its holdings] at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-71 (2003). A state court's decision is contrary to clearly established federal law "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from

[Supreme Court] precedent." *Williams v. Taylor,* 529 U.S. 362, 405-06 (2000). A state court's factual findings are unreasonable if "reasonable minds reviewing the record" could not agree with them. *Brumfield v. Cain,* __ U.S. __, 135 S. Ct. 2269, 2277 (2015)(citations omitted).

"For relief to be granted, a state court merits ruling must be so lacking in justification that there was an error…beyond any possibility for fair minded disagreement." *Bemore v. Chappell*, 788 F. 3d 1151, 1160 (9th Cir. 2015). "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' …and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010). The standard is " 'difficult to meet,'" and a "petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

### b. Application of AEDPA

Upon receipt of Wick's postconviction filing, the district court ordered the State to respond and required Wick's trial counsel, Fellman, to submit an affidavit. (Doc. 15-1 at 3, 8.) The district court then issued its reasoned order denying Wick's petition.

The district court found Wick executed a Plea Agreement and Plea of Guilty and Waiver of Rights form. Wick at no time alleged that he misunderstood any of these forms, the rights he was waiving by entering into the plea agreement, or the

consequences of his plea of guilty. *Id.* at 14. Wick's primary contention was that he pled guilty in March of 2015 without having personally viewed the surveillance video. The court noted that at the time of his plea, Wick knew of the existence of the video and knew he had not reviewed it, but nonetheless persisted in his entry of plea. *Id.* at 15. Additionally, there was no indication that Wick was pressured or coerced into accepting the plea. *Id.* The court further noted that Fellman exercised reasonable diligence in obtaining the video and provided it to Wick as soon as practicable. *Id.* at 15-16.

Further, the district court observed that Fellman reviewed the surveillance video and provided his assessment that given the evidence against Wick, it would likely be in Wick's best interest to proceed to sentencing. (Doc. 15-1 at 12.) Wick and Fellman also discussed: the legal standard at play if Wick were to attempt to withdraw his guilty plea; the legal standard necessary to prove assault with a weapon; and, the fact that the eye witness testimony, including that of one of the saloon employees and the arresting officer, in Fellman's opinion, was sufficient to convict Wick regardless of the poor quality of the surveillance video. *Id.* at 13. Wick ultimately advised Fellman that he wished to proceed to sentencing. The district court determined Fellman's account of the events leading up to Wick's change of plea and sentencing were more credible and specific than the general assertions advanced by Wick. *Id.* at 12-13.

Additionally, the district court determined Fellman did not improperly persuade or prevent Wick from moving to withdraw his guilty plea, as Wick had alleged. *Id.* at 13. Thus, the court held Fellman provided effective assistance to Wick and that there was nothing in the record which would indicate Wick had entered an involuntary plea. *Id.* at 13, n. 1. As set forth above, the Montana Supreme Court reviewed the rationale of the district court in denying this claim and determined the lower court did not err. *State v. Wick*, 2018 MT 99N, ¶ 7.

In his petition before this Court, Wick simply recasts the same arguments he made to the state courts regarding Fellman's performance and the voluntariness of his plea. While Wick persists in his belief that his plea was involuntary, representations made at a change of plea hearing, as well as findings made by the court accepting the plea, constitute a "formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-4 (1977).

As found by the district court and undisputed by Wick, Wick indicated that he understood the charges against him as well as the plea agreement he had entered into and expressed his desire to maintain his plea of guilty and proceed to sentencing. Further, Wick has not established that any "promises or threats" were made to him which would have converted his entry of plea into an involuntary act. *See Sanchez v. United States*, 50 F. 3d 1448, 1454 (9th Cir. 1995). Wick simply provides conclusory allegations which are unsupported and, thus, do not form a

10

basis for habeas relief. Considering all of the facts and circumstances before the Court, Wick has not met his burden of establishing that his guilty plea was not entered voluntarily or intelligently or that the state courts' finding of voluntariness was an unreasonable one. Thus the state courts' determination that Wick voluntarily entered his guilty plea is entitled to deference. *See* 28 U.S.C. § 2254(d).

Wick also now seems to challenge the credibility of the witnesses and posits they could potentially have been impeached upon cross-examination. (Doc. 15 at 4). Additionally, Wick challenges the sufficiency of the evidence the state had against him, including the surveillance video. But had Wick wished to challenge the witness testimony or the state's evidence, the time to do so would have been at trial.

The general rule is that " ' a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.'" *United States v. Broce*, 488 U.S. 563, 574 (1989) (quoting *Mabry v. Johnson*, 467 U.S. 504, 508 (1984)). This rule is predicated on the notion that a valid guilty plea "removes the issue of factual guilt from the case." *Menna v. New York*, 423 U.S. 61, 62 n. 2 (1975). As the United States Supreme Court explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

As explained above, this Court finds the state courts made a reasonable determination that Wick entered a voluntary plea. Accordingly, by virtue of this guilty plea, Wick has now waived the right to challenge the underlying state proceedings that preceded his plea. This claim should be denied in its entirety.

## V. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Wick has not made a substantial showing that he was deprived of a

constitutional right. His claim of denial of postconviction counsel is not cognizable in federal habeas and his claim of an involuntary plea/ineffective assistance of counsel does not survive deferential review under AEDPA. There are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability should be denied.

Based on the foregoing, the Court makes the following:

### RECOMMENDATION

1. The Amended Petition (Doc. 15) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondent and against Petitioner.

3. A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Wick may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[4] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)." Therefore, since Wick is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.

<u>Mr. Wick must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of his case without notice to him.

DATED this 28th day of August, 2018.

<i>/s/ Jeremiah C. Lynch</i><br>
Jeremiah C. Lynch<br>
United States Magistrate Judge